J-S46013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CHARLES DOBBINS :
:
Appellant : No. 2677 EDA 2018

Appeal from the Judgment of Sentence Entered September 10, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002821-2015,
CP-51-CR-0003983-2015

BEFORE: PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED JULY 31, 2020**

Appellant, Charles Dobbins, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas on September 10, 2018, following his conviction for criminal solicitation-statutory sexual assault, and related sexual offenses with minors, based on conduct with his girlfriend's daughter and his own daughter. Dobbins raises a challenge to the admission of third party testimony as well as a challenge to the sufficiency of the evidence to support all of his convictions. We affirm.

The trial court summarized the factual history of this case as follows.

In 2014, S.E., resided with her mother and [Dobbins], who was dating S.E.'s mother. [Dobbins] had a daughter named M.W., [whom] S.E. considered her step-sister because of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

relationship between her mother and [Dobbins]. S.E. and M.W. often played together and M.W. often stayed at S.E.'s house. M.W. slept either in S.E.'s room or in [Dobbins'] bedroom when she did so.

During the summer of 2014, [Dobbins] began trying to spend time alone with S.E. late at night after everyone went to bed. The first two times [Dobbins] did so, he asked S.E. to watch a movie with him and thereafter asked her to listen to some music. She turned down his requests.

Subsequent thereto, S.E. was alone in her room asleep when [Dobbins] entered her room and laid down on top of her under her blanket and began sucking in her chest area. [Dobbins'] actions awakened S.E. and she ordered [Dobbins] to leave her room, which he did immediately. On September 21, 2014, [Dobbins] thereafter again entered [S.E.'s] room late at night and began shaking her legs, arms, and thighs. When S.E. woke up, [Dobbins] offered S.E. $50.00 for a kiss and $100.00 to have sex with him. [S.E.] rejected [Dobbins'] offer and told him to leave. [Dobbins] immediately left the room. After [Dobbins] did so, S.E. used various items, including a chair, to barricade the door to her bedroom, something she did the first three times [Dobbins] entered her room. S.E. told her mother about what [Dobbins] was doing, but did not go into detail.

The next morning, S.E. went to her sister, V.E.'s house. Upon arriving, she hugged V.E. but did not tell her about what [Dobbins] had done to her. S.E. then went upstairs and told her other sister D.B., about what [Dobbins] had done to her the previous evening. D.B. told S.E., who became visibly upset, that she had to tell V.E. about what occurred. Although she was reluctant to do so, S.E. did so. When she did, V.E. and her brother, who was also at her sister's house, began yelling and screaming as did others who were present.

Eventually, several persons, including S.E., returned to S.E.'s house. V.E. called the police and they arrived shortly thereafter and S.E. told them what [Dobbins], who was in his bedroom when the police arrived, had done. S.E. thereafter gave police a formal statement setting forth [Dobbins'] actions.

T.E., S.E.'s mother, testified that S.E. told her about [Dobbins'] actions and behavior at some point in the summer of 2014. T.E.

confronted [Dobbins] and he denied having done what S.E. accused him of doing.

On the day the police were called, S.E. told her that [Dobbins] had entered her room the previous night and solicited her to have sex with him. V.E. also told her about what S.E. had said in [Dobbins'] presence and [Dobbins] remained silent. T.E. went to the police station with her daughter that day and when she returned home, [Dobbins] was packing his belongings. Approximately a week later T.E. learned that [Dobbins] had left Philadelphia.

V.E. confirmed that S.E. told her about the incident. She also indicated that when she was in her twenties, [Dobbins] twice offered her money to have sex with him and she turned him down. She told her mother about the offer and her mother said that she would take care of it.

M.W. confirmed that in the summer of 2014, when she was fourteen, she often stayed at [Dobbins'], S.E.'s and T.E.'s residence and either slept in S.E.'s room or with [Dobbins]. On every other weekend, when she slept with [Dobbins] in his bed, [Dobbins] would touch her vagina and buttocks over her clothes while she was sleeping. M.W. would wake up during the episodes and would roll over to signal [Dobbins] that she was awake in an effort to get him to stop. [Dobbins] twice told her to be quiet when she began crying, and not tell anyone. On one occasion, [Dobbins] gave her money the morning after one of the episodes to pay for the ride back to her mother's residence. M.W. told her mother what was happening with [Dobbins] when M.W. was being treated at a hospital for an accidental injury.

L.W., M.W.'s mother, learned that [Dobbins] had done something to M.W. in September of 2014 after M.W. told a nurse about [Dobbins]'s activities while she was being treated for injuries suffered in an accident. L.W. then learned from M.W. that on one occasion, when she slept in [Dobbins'] bedroom, [Dobbins] touched her breasts and vaginal area over her clothes while she was asleep.[] Her daughter also told her that [Dobbins] offered her to have money for sex with him. L.W. thereafter called T.E. and T.E. filled her in about what [Dobbins] had done to S.E. She thereafter learned that [Dobbins] had left Philadelphia and was living in South Carolina, where [Dobbins] was eventually taken into custody pursuant to a warrant and then extradited to Philadelphia.

Trial Court Opinion, 2/7/2019, 2-5 (citations to the record omitted).

Dobbins was subsequently charged at CP-51-CR-0002821-2015 with criminal solicitation-statutory sexual assault, unlawful contact with a minor, corruption of minors, and endangering the welfare of children. He was further charged at CP-51-CR-0003983-2015, with criminal solicitation-rape of a child, unlawful contact with a minor-sexual assault, criminal solicitation-incest, corruption of minors, endangering the welfare of children, indecent assault of a person less than 13 years of age, and simple assault.

In June of 2018, after a waiver trial on both sets of charges,[1] Dobbins was found guilty of the above listed charges. In September 2018, Dobbins was sentenced to an aggregate five to ten years' incarceration followed by ten years' probation at docket CP-51-CR-0002821-2015, and a consecutive eight to sixteen years' incarceration followed by ten years' probation at docket CP-51-CR-0003983-2015.

Dobbins then filed this timely appeal by filing a notice of appeal at both trial court docket numbers, each with a different time stamp, and each listing both trial court docket numbers.

In **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), our Supreme Court held, prospectively, that "where a single order resolves issues arising

---

[1] Dobbins testified on his own behalf at trial, denying touching either S.E. or M.W., soliciting S.E. for sex, or going into S.E.'s bedroom.

on more than one docket, separate notices of appeal must be filed for each case." *Id*. at 971. "The failure to do so requires the appellate court to quash the appeal." *Id*. at 976-977; *see also* Pa.R.A.P. 341, Official Note.

A divided three-judge panel of this Court then filed a published opinion in *Commonwealth v. Creese*, 216 A.3d 1142 (Pa. Super. 2019), construing *Walker* to mean that "we may not accept a notice of appeal listing multiple docket numbers, even if those notices are included in the records of each case." *Creese*, 216 A.3d at 1144. Instead, the panel concluded "a notice of appeal may contain only one docket number." *Id*. (emphasis added). The panel quashed the appeal. Neither party filed a petition for allowance of appeal with the Supreme Court, rendering *Creese* a final disposition and setting precedent in this Court.

Our Court recently granted *en banc* review to decide whether *Walker* and Rule 341 dictate that only one number may appear on a notice of appeal. In an opinion filed in July 2020, this Court expressly overruled *Creese*'s determination that "a notice of appeal may contain only one docket number." *Commonwealth v. Johnson*, ____ A.3d.____ (Pa. Super. 2020) at *____.

We observed that Rule 341 and *Walker* make no mention of case numbers on a notice of appeal. *See id*. To be sure, the error in *Walker* was the filing of a single notice of appeal affecting multiple cases and several defendants. The bright-line rule set forth in *Walker* only required an appellant

to file a "separate" notice of appeal for each lower court docket the appellant was challenging.

Here, it appears Dobbins filed a separate notice of appeal for both dockets below, because both notices have different time stamps. The fact that the notices contained both lower court numbers is of no consequence. Indeed, the Rules of Appellate Procedure are to be liberally construed to effectuate justice. Pa.R.A.P. 105(a); **see also** Pa.C.S.A. § 1928(c). We should not invalidate an otherwise timely appeal based on the inclusion of multiple docket numbers, a practice that the Rules themselves do not expressly forbid. Therefore, we decline to quash this appeal and will review the merits of Dobbins' claim.

Dobbins presents two questions for our review on appeal:

1. Did the court err by overruling defense [counsel's objection] to an individual not a complainant testifying [ ] that when she was an adult Appellant Dobbins offered her money to have sex?

2. Was the evidence insufficient to convict Charles Dobbins of any charges?

Appellant's Brief, at 3 (unnecessary capitalization omitted).

In his first issue on appeal, Dobbins argues the trial court abused its discretion by allowing V.E., one of Dobbins' girlfriend's adult daughters, to testify that Dobbins offered her money in exchange for sex. Specifically, he argues the testimony was not relevant in a case where the two victims were young minors, and the prejudicial effect was not harmless error.

The standard of review for challenges to the admissibility of evidence is settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015) (citations and quotation marks omitted). Finally, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted).

After careful review, we find the trial court thoroughly and adequately addressed this issue in its Rule 1925(a) opinion. Accordingly we adopt the trial court's reasoning. ***See*** Trial Court Opinion, 2/7/2019, at 5-11. The fact that V.E. was an adult at the time Dobbins solicited her is not sufficient on its own to effect the analysis, as we conclude that the circumstances of V.E.'s testimony is sufficiently similar to the two cases at hand. The incidents reflect a clear pattern where Dobbins was legitimately in each victim's home; each victim was either related to Dobbins or to his then-girlfriend; Dobbins was cognizant that each victim was alone; and Dobbins offered each victim money in exchange for sex. Dobbins' first claim on appeal merits no relief.

In his second issue on appeal, Dobbins argues the evidence presented at trial was insufficient to support the verdict. We are constrained to conclude that Dobbins' sufficiency claim is waived, as his Rule 1925(b) statement did not adequately identify the errors that he intended to challenge on appeal.

It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). Further, an appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal. *See* Pa.R.A.P. 1925(b)(4)(ii) (requiring a Rule 1925(b) statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"). A Rule 1925(b) concise statement that is too vague can result in waiver of issues on appeal. *See Commonwealth v. Dowling*, 778 A.2d 683, 686-687 (Pa. Super. 2001) ("a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all").

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [ ] does not specify the allegedly unproven elements[,] ... the sufficiency issue is waived [on appeal].

*Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015) (citation omitted).

In this case, Dobbins' Rule 1925(b) statement is a blanket statement, declaring that the evidence was insufficient to convict him. **See** Appellant's Rule 1925(b) Statement, 12/20/2018, at 2. Without specifying which of his convictions he is challenging, he simply claims there was no physical evidence, no prompt complaint, and that the disclosure by the two complainants happened at different times, well after the alleged incidents, none of which are elements of his crimes. **See id**. The statement fails to "specify the element or elements upon which the evidence was insufficient" to support Dobbins' convictions. Thus, we must conclude that Dobbins' sufficiency of the evidence claim is waived on appeal. **See Commonwealth v. Williams**, 959 A.2d 1252, 1257-1258 (Pa. Super. 2008).

Further, although Dobbins phrased this claim as a challenge to the sufficiency of the evidence, in actuality, we find his claim to be a challenge to the weight of the evidence. Dobbins' argument does not focus at all on the Commonwealth's failure to prove any particular element of the crimes he was convicted for. Rather, he focuses on the fact that they did not report the allegations right away, and that their testimony was not adequate. **See** Appellant's Brief, at 29-32. This is a challenge not to the sufficiency of the evidence, but to its weight. **See Commonwealth v. Wilson**, 825 A.2d 710, 713-714 (Pa. Super. 2003) ("A sufficiency of the evidence review, however,

does not include an assessment of the credibility of the testimony offered by the Commonwealth.") By making this argument, Dobbins "has blurred the concepts of weight and sufficiency of the evidence." *Id*., at 714. The trial court, as fact finder, was free to credit the testimony of the victims.

A challenge to the weight of the evidence must, in the first instance, be presented to the trial court. *See Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. Super. 2009). As Dobbins did not raise a challenge to the weight of the evidence in the trial court, any such claim is waived for purposes of this appeal. *See Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa. Super. 2011). Thus, Dobbins' second issue on appeal would merit no relief in any event.

As we find neither of Dobbins' issues on appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/20